ELLIS, Judge.
Mervin Joseph Polmer, hereinafter referred to as petitioner, was adjudged an interdict on January 7, 1957 and thereafter his brother, Irvin F. Polmer, qualified as the curator, and his sister, Mrs. Estelle P. Rabin, hereinafter referred to as opponent, qualified as under-curatrix.
As frankly stated in both briefs, family differences arose and as a result the under-curatrix-opponent filed a rule and obtained an order directing the curator to show cause on January 12, 1961 why he should not be removed and she permitted to qualify in his stead, and the son of the under-curatrix to be appointed under-curator. There was also a suit filed by the curator against the son of the opponent, with which we are not now concerned, and being only mentioned to show the family dissension.
On January 6, 1961 (before the return on the said rule) suit was filed by the petitioner to have his interdiction terminated and revoked; the curator was made defendant, accepted service thereon, and on the same day filed answer admitting the allegations of the petition and prayed that judgment be granted revoking the judgment of interdiction.
On January 12, 1961 a petition entitled “Opposition to Termination of Interdiction” was filed by the intervenor, Mrs. Estelle P. Rabin, who was also under-cura-trix, in which she set forth that she was the duly appointed, qualified and sworn under-curatrix for the interdict; that she was neither served nor cited with a copy of the petition filed by the interdict and *698 that she is an indispensable party to any revocation of this interdiction by virtue of LSA-Civil Code, Article 421; that the interdict was still paralyzed in his right arm and right leg and unable to stand, confined to a wheel chair and is in the same identical physical condition as he was four years ago and called for strict proof of the present physical condition and the capacity of the interdict. She prayed that this “Opposition to Termination of Interdiction” be maintained and that she be appointed Curator for the interdict and that Philip P. Spencer, her son, be appointed under-curator and that the curator be called upon to make a strict accounting.
The matter came up for trial and oral objection was made by counsel for petitioner in support of a previously filed written motion objecting to the intervention of opponent (under-curatrix) upon the ground that she had no legal interest in the suit to terminate and revoke the judgment of interdiction of petitioner. The Court orally ruled as follows :
“On the basis of the holdings in the cases cited in [Oliver v. Terrall, 152 La. 662] 94 So. 152 and [Kelly v. Kelly, 183 La. 580] 164 So. [596] 597 the only parties at interest in this proceeding are the interdict and the curator, there are no other parties at interest, and on the basis of those cases the ruling of the Court is there are no other parties at interest and that the application of Mrs. Estelle Palmer Rabin is dismissed.”
After said ruling neither the opponent nor her counsel were allowed to participate in any manner in the trial on the merits and the following judgment was signed ordering the dismissal of the opposition of the under-curatrix and we quote:
“Interdiction of State of Louisiana
Mervin Joseph Polmer 17th Judicial District Court
No. 3487 Probate Parish of Terrebonne
“On motion of Sessions, Fishman, Rosenson & Snellings and Pugh, Lan-ier & Pugh, Attorneys for Mover, Mervin Joseph Polmer, and upon suggesting to the Court that there has heretofore been filed a purported opposition to Termination of the said Interdiction of the said Mervin Joseph Polmer,. which said Opposition was filed on behalf of Mrs. Estelle Polmer Rabin, the Under-Curator for the said Mervin Joseph Polmer, and upon further suggesting to the Court that under the provisions of Article 4557 of the [LSA-J Louisiana Code of Civil Procedure the party defendant in said suit is the Curator and that therefore the said Mrs. Estelle Polmer Rabin has no legal interest in said suit.
“It Is Ordered that the said opposition be and it is hereby dismissed.
“Houma, Louisiana, January 30th, 1961
“J. Louis Watkins “Judge”
After a trial upon the merits the Lower Court on January 30th, 1961 signed formal judgment terminating and revoking the previous judgment of interdiction of the petitioner.
There was no appeal from the judgment dismissing the opposition of the opponent (under-curatrix). We are therefore not now concerned with the correctness vel non of the judgment dismissing the petition of intervention of the opponent.
On February 8th, 1961, by written petition through counsel who had not previously appeared in these proceedings, the under-curatrix prayed for a devolutive appeal from the judgment on the merits and we quote in part from said petition:
“Interdiction of Mervin Joseph Polmer
“To the Honorable the Judges of the Seventeenth Judicial District Court in and for the Parish of Terrebonne, State of Louisiana:
“The petition of Mrs. Estelle P. Rabin, Under-curator of the interdict, Mervin Joseph Polmer, with respect shows:
“That a judgment terminating the interdiction of the said Mervin Joseph Polmer *699 was rendered herein on the 30th day of January 1961 and signed on the 30th day of January 1961; that said judgment is contrary to the law and the evidence and petitioner is aggreived thereby and desires to appeal therefrom devolutively to the Court of Appeal, First Circuit, State of Louisiana.”
The Lower Court by written order on the same date of the application for a devolu-tive appeal granted same. We are, therefore, only concerned with the right of the opponent to appeal from the judgment on the merits terminating and revoking the prior judgment of interdiction of the petitioner. Under Article 2086 of the LSA-Code of Civil Procedure that “A person who could have intervened in the trial court may appeal, whether or not any other appeal has been taken”, it is necessary that we discuss in full the right of the opponent to have, intervened in this proceeding, for if she had the right to intervene she also had the right to appeal. Our discussion on this point is limited strictly to the right of the opponent to appeal from the judgment on the merits as no appeal was taken from the judgment dismissing her opposition.
An answer to the question posed by counsel for the appellant, viz.: “Does a sister and under-curatrix of an interdict have a legal right to oppose revocation of the judgment of interdiction ? ” will determine the legal right of appellant to appeal from the judgment on the merits which terminated and revoked the prior judgment of interdiction of the petitioner.
The District Court cited Oliver v. Terrall, 152 La. 662, 94 So. 152, 153; Kelly v. Kelly, 183 La. 580, 164 So. 596 as authority for holding the under-curatrix had no interest in the action to revoke the interdiction and, hence, dismissed her opposition.
The case of Oliver v. Terrall, supra, did not involve a judicial interdiction but only a commitment to the insane asylum at Pine-ville by the District Court of Rapides Parish, under the provisions of Act 68 of 1918, pg. 100, being an act to provide for proper proceedings “for the admission of insane persons * * * to the insane hospitals of the state.” In this case the Supreme Court stated:
“Their complaint is that the alleged interdiction was pronounced without citing said Oliver, and without oportunity given him to defend himself; that he was not then insane and is not now insane. They seem to conceive that such proceedings have the same effect upon his civil capacity and right to manage his own affairs, as have the proceedings for interdiction authorized by the Civil Code, arts. 389 to 426; and hence, that ‘the interdiction can only be revoked by the same solemnities which were observed in pronouncing it.’ C.C. art. 421.
“They implead the defendants as being the parties at whose suggestion and upon whose information . the commitment was made.
“The defendants except that the husband, having been interdicted, cannot bring this suit or stand in judgment therein; that the wife is without interest therein; that in any event they (the defendants) are not the parties against whom these proceedings should be brought.
“I.
“It cannot be doubted that the interdicted person who recovers his sanity is the proper party to bring the action to revoke his interdiction, and that he has the same capacity to stand in judgment when the interdiction is revoked as he had when such interdiction was pronounced. He is indeed the one most interested in revoking the interdiction; and if it were otherwise, then an interdicted person who recovers his sanity would yet be without a remedy unless some one should volunteer to assist him, which other person would always be met, as in this case, by a plea of want of interest. There is no doubt whatever that Oliver himself has capacity to bring these proceedings, if any such proceedings are needed in this case. The fact that his wife joins *700 him, even if without interest, does not impair that right, and her presence in the suit is of no consequence.
“II.
“On the other hand, the defendants are clearly not the parties to defend this suit, if any proceedings at all to remove the alleged interdiction be needed. For in inter-dictions under the Code, which may be brought about on the application even of strangers (C.C. art. 391), the action to revoke such interdiction ought certainly to be carried on contradictorily with the curator appointed to administer the property of the interdict, and from whom alone he can recover it, the party at whose instance the interdiction was pronounced having neither interest nor concern in any subsequent proceedings. [Emphasis added.]
“III.
“But the fact of the matter is that this whole proceeding is irregular and unnecessary. It does not appear from the petition whether said Oliver be or be not still confined in the asylum. If still confined, his remedy is by habeas corpus to obtain his release. If not still confined, then his release put an end to the whole matter, a commitment to an insane asylum not being an interdiction within the meaning of the Civil Code aforesaid, and no formal proceeding to revoke it being at all necessary.
* *****
“It therefore appears that, although there is here a proper party plaintiff, yet there is no proper party defendant, and that the whole proceeding is irregular and unnecessary; and accordingly the judgment dismissing the suit is correct.”
Counsel for the petitioner quotes in his brief that portion of the opinion which we have emphasized, although counsel frankly states that the language was not necessary to the decision. Nothing in the above quoted decision should be interpreted as a holding by the Supreme Court that an under-curatrix had neither interest nor concern in her interdict’s suit to terminate and revoke his interdiction.
In Kelly v. Kelly, supra [183 La. 580, 164 So. 598] counsel for the petitioner quotes the following statement of the Supreme Court in that case and we quote:
“It is not only clear, but it is essential, that the vacancy in a curatorship should be filled by a curator, and by no one else, in a suit brought by an interdict to set aside the judgment of interdiction and to recover his estate, which necessarily includes accounting for its administration.”
In order to understand the above quote it is necessary that the question before the Court be understood as well as the facts in the case and we, therefore, quote from the case:
“i. The issue to be decided in this case is whether, upon the death of the curatrix, it became necessary to appoint a curator, against whom Wesley L. Kelly, seeking to set aside the judgment of interdiction, must proceed, or whether the appointment of a curator ad hoc, in such a proceeding, is all that is required by law.
“This is not an original proceeding to have a person interdicted. If it were, it would be proper to appoint an attorney at law to represent the defendant, whose interdiction is prayed for. C.C. art. 391.
“But, in the instant case, Wesley L. Kelly is seeking to have the judgment of interdiction set aside, and to recover his property and its control, while the office of curatrix is vacant.
“It is provided in article 409 of the Civil Code that: ‘The curatorship shall not devolve upon the undercurator when the same shall become vacant; but when it shall become necessary to appoint another curator, it shall be the duty of the undercurator to cause such an appointment to be made.’
“Article 415 of the Civil Code provides that the laws applying to tutors also apply to curators of interdicted persons as to ‘the *701 mode of administering/ ‘the sale of the estate/ and ‘the mode of rendering the accounts, and the other obligations.’
“No such power or duties are conferred by law upon a mere curator ad hoc. The estate of the interdict is neither in the possession of a curator ad hoc to be delivered to the interdict, should the judgment of interdiction be set aside, nor has a curator ad hoc, as such, any power of administration, nor is he under any legal duty to render accounts. Such powers are conferred by law exclusively upon tutors, curators, and administrators. * * * ”
In answering the question the Court stated:
"Our conclusion is that the undercurator of the interdict has proceeded properly in this case, and is entitled to have duly homologated the proceedings of the family meeting recommending the appointment of a curator to fill the vacancy and as a proper person to defend this suit.”
The Kelly case stands for the proposition that in suits by an interdict seeking to terminate and remove the judgment of interdiction and to recover his property and its control, the proper and only party defendant is the curator.
The petition for termination of the interdiction was filed on January 6, 1961 and therefore controlled by any applicable articles in the Louisiana Code of Civil Procedure effective January 1st, 1961. Article 4557, LSA-C.C.P. provides :
“A judgment of interdiction may be revoked only by a judgment rendered in the interdiction proceeding, contradictorily with the curator. The interdict has procedural capacity to sue in his own name to revoke the interdiction.”
Therefore, the cases relied upon by counsel for the petitioner and curator, as well as the Court in its judgment or signed order dismissing the intervention and opposition of the under-curatrix to the petition of the interdict seeking a judgment revoking the interdiction, are not decisive of the question before the Court, viz., the right of the under-curatrix to intervene and oppose the petition of the interdict to terminate the interdiction, and the concurrence by answer of the curator.
A review of the articles of the Louisiana Civil Code and the Louisiana Code of Civil Procedure relating to the subject matter under consideration, we believe, will be decisive.
Under Article 309 of the LSA-Civil Code and 4543 of the LSA-Code of Civil Procedure, a proceeding for interdiction may be brought by the spouse or any relative of the person sought to be interdicted or by any other person. Also see Article 391 of the LSA-Civil Code. The acts of imbecility, insanity or madness must be proved to the satisfaction of the judge (Article 393 of the LSA-Civil Code), and within a month from the date of the judgment of the interdiction if there has been no appeal from same, or, if there has been an appeal, then within a month from the confirmative sentence, it shall be the duty of the judge of the domicile or residence of the person interdicted to appoint a curator to his person and estate, LSA-Civil Code,' Article 404, LSA-Code of Civil Procedure, Article 4550. (This last cited article contains an additional provision that the spouse of an interdicted person has the prior right to be appointed curator.) And in every curator-ship to an interdicted person, there shall be an under-curator whom it shall be the duty of the judge to appoint, and at the same time the letters of curatorship are certified' for the curator. (LSA-Civil Code, Article 406.)
Article 4553 of the LSA-Code of Civil Procedure, on the subject of an under-curator reads as follows:
“At the time the court appoints a curator, the court shall also appoint a responsible person as undercurator, who shall have the same duties and responsibilities as an undertutor. In so *702 far as applicable, Articles 4201 through. 4206 apply also to undercurators.
“The undercurator is relieved of further duty and responsibility as under-curator upon the death of the interdict or upon rendition of judgment revoking the interdiction. However, his liability for acts prior thereto shall not be affected.
“Source: C.C. Arts. 406-411.”
Also see LSA-Civil Code, Articles 407, 408, 409, 410, 411.
In general, Article 275 of our LSA-Civil Code states in broad language the duties of an under tutor as follows:
“It is the duty of the undertutor to act for the minor, whenever the interest of the minor is in opposition to the interest of the tutor. * * * ”
Under Article 4202 of the LSA-Code of Civil Procedure, which outlines the “General duties of undertutor” we find the following:
“The undertutor shall express his concurrence or nonconcurrence in action suggested by the tutor to the court, as set forth in Article 4271, and shall act for the minor whenever the minor’s interest is opposed to that of the tutor.”
Also, under “Official Revision Comments” is the following:
“(a) This article sets forth the general rule that the undertutor is the ‘watch dog’ for the minor. The last sentence is nearly identical to Civil Code Art. 275, which has been in use since 1808.”
In addition, counsel for the under-curatrix cites in his brief from Planiol Civil Law Treatise, Vol. 1, Part 2, page 130, par. 1865:
“What justifies the permanent presence of the undertutor is the necessity of exercising a constant supervision over the acts of the tutor, that is to say a species of control. This is the necessary role of the undertutor.”
 We therefore believe that the law clearly sets forth that it is the duty of an under-curator to act whenever he or she believes that the best interests of the interdict are contrary to the proposed action by or on behalf of the interdict. The legal duty to oppose any action by the interdict or the curator, which the under-curator does not believe is to the best interest of the interdict, is incumbent upon the undcr-curator until the interdiction is removed by the death of the interdict or regular judicial pronouncement or removal of the under-curator prior to either event.
We are of the opinion that although the under-curatrix in the case at bar was not a necessary nor proper party defendant that she had the right to intervene or oppose the petition of the interdict seeking the revocation and termination of the judgment of interdiction. The termination and revocation of an interdiction carries with it the restoration and return of the property of the interdict, and if the latter is in the same condition that brought about the judgment of interdiction he would not be competent to handle his affairs. The under-curatrix being of the opinion that the interdict was still incompetent for the same reasons that brought about his interdiction was under a legal duty to oppose the revocation and termination of the interdiction.
The remedy afforded an under-curator by law who believes that it is to the best interest of the interdict that the interdiction not be terminated is to either intervene in the suit by the interdict contradictorily with the curator or against the curator as defendant for the purpose of removal of the interdiction, or by appeal from the judgment granting the revocation and termination of the interdiction. The right to intervene is accorded by Article 1091 of the LSA-Code of Civil Procedure which reads as follows:
“A third person having an interest therein may intervene in a pending action to en *703 force a right related to or connected with the object of the pending action against one or more of the parties thereto by:
“(1) Joining with plaintiff in demanding the same or similar relief against the defendant ;
“(2) Uniting with defendant in resisting the plaintiff’s demand; or
“(3) Opposing both plaintiff and defendant.”
In the “Official Revision Comments” we find the following:
“The first paragraph is declaratory of the requirement of connexity which for years has been the traditional basis of the incidental demands in civil jurisdictions. The second paragraph, while too general to afford much concrete assistance, nonetheless conveys the idea that a third person may enforce through intervention the rights of one of the original litigants when his own rights would be prejudiced by the non-enforcement thereof. Collectively, these two paragraphs provide a workable formula: a third person having a justiciable right related to or connected with the object of the principal suit may enforce that right through intervention. This concept and the provisions of Art. 389 of the 1870 Code of Practice have been combined in the above article.”
Counsel for the petitioner in their brief on this point contend:
“The right of intervention is granted under Article 1091, Louisiana Code of Civil Procedure, only to a person ‘having an interest’ in the proceedings. The Article reads: (Supra.)
* * * # * *
“The law is clear that the right of intervention is afforded for the purpose of asserting rights personal to the intervenor. This is what is meant by ‘an interest therein’. The interest referred to is the interest of the intervenor, and not the interest of either the plaintiff or defendant. Accordingly, where a third party attempted to appeal from a judgment of interdiction, the Court said:
“ ‘Defendant has not appealed, and has not filed the least complaint since the interdiction has been pronounced. It must be borne in mind that there are rights that are merely personal that give no right to interference because of a possible moneyed interest of a third person, if it be not apparent that the rights of this third person will be prejudiced. The son alone appeals as relates to his asserted personal interest. It is true that a person not a party to the record may appeal by alleging a grievance of a personal nature, and making a showing that there is ground for his complaint.’ Bland vs. Edwards, 52 La. Ann. 822, 823, 27 So. 289.”
The comments under Article 1091 of the LSA-Code of Civil Procedure clearly state the intent and meaning to be given to the article and it would be inclusive of the legal right to enforce the legal duties imposed upon the under-curator by the filing of an intervention in opposition to the petition of the interdict and an acquiescence by answer of the curator for the termination and revocation of the original judgment of interdiction. The words “having an interest” as used in the article under discussion is not limited to a pecuniary or financial interest but any justiciable right related to or connected with the object of the principal suit which would include the performance of a legal duty springing from the imposition of a legal obligation. The under-curatrix in the case at bar “has an interest” imposed by law in any action affecting the interest of the interdict or taken by or on behalf of or against the interdict, and in any such legal procedure so taken the under-curatrix would have the right to intervene and oppose any such action which she did not believe to be to the interest of the interdict personally or property-wise.
In the Edwards case, supra, there was no question of the right of an under-curator to intervene in a suit seeking the revocation and termination of the original judgment of *704 interdiction. This was a case in which the interdiction was pronounced against the defendant as a result of a suit by her daughters for that purpose. From this judgment a son appealed and set out as grounds to set aside the judgment “that the petition of interdiction does not aver a proper cause for interdiction, that the judgment was rendered without proper proof, and that none of the forms of the law were observed in matter of the interdiction, and that all this can be made manifest if this court should issue an order authorizing further evidence than was heard in the district court to be heard on appeal. The allegation of appellant is that the matters and things involved in the issues before the court exceed the sum of $50,000, in which his interest exceeds $2,000; that he is his mother’s agent, and that he is indebted to her.” [52 La. Ann. 822, 27 So. 290.] The defendant did not appeal.
In addition to the above quote, supra, made by the court in the Edwards case, it also stated:
“There is nothing of record showing that the son’s interest as relates to the defendant will be in the least affected. There is no question raised of personal injury inflicted on the defendant by the proceedings. All questions relating to the defendant are entirely eliminated, and not in the least to be considered under the issues as now presented. Now, as this son does not appear, as he well might, in proper proceedings, if the grounds justify it, to have the interdiction proceedings in his mother’s behalf removed or recalled, but sues only as relates to his personal interest, we do not think that he shows that he has an appealable interest. * * * ”
The above case is not apposite to the issues before this Court.
We are, therefore, of the opinion that the under-curatrix herein had the legal right to intervene in opposition to the interdict’s petition for removal and revocation of the original judgment of interdiction, in which the curator had acquiesced by his answer.
 The right of the appellant — under-curatrix — to appeal under the LSA-Code of Civil Procedure Article No. 2086, supra, has clearly been shown by the above discussion of her right to intervene. The following quoted: “Official Revision Comments” are pertinent to a consideration of the merits of the case under the devolutive appeal taken by the under-curatrix-appel-lant, viz.:
“(b) Art. 1091, supra, requires that there be connexity between the intervention and the main case, and furnishes the criterion for determining the right of appeal of third persons under the above article.
“(c) When a third person appeals, he takes the record as he finds it, and must show either that the judgment appealed from is erroneous or that it was the result of fraud and collusion between the original parties. Haas v. Haas, supra; Balis v. Mitchell, 48 So.2d 691 (La.App.1950).”
In Balis v. Mitchell, supra, this Court stated [48 So.2d 695] :
“As to the merits, it is well-settled that one appealing from a judgment rendered in the suit to which he was not a party must take the record as he finds it and unless it be shown that the judgment is erroneous as between the parties to the suit or that it is the result of fraud and collusion on their part, he cannot complain. Haas v. Haas, 182 La. 337, 162 So. 5; Mutual Life Ins. Co. v. Houchins, 52 La.Ann. 1137, 27 So. 657; Griffing v. Bowmar, 3 Rob. 113, at page 116; Herman v. Smith, 7 Mart., N.S., 676.”
Taking the record as now made up on the merits and upon which the District Judge based his judgment removing and terminating the interdiction, we find that Dr. Carl Rabin who practiced internal medicine, which he stated is a “diagnostic type of practice, * * * ”, testified that he was familiar with Mr. Mervin Polmer, the interdict, and had known him for approximately longer than seven years which antedated his interdiction, and that he had *705 known him prior to his stroke (Polmer was interdicted for physical infirmities, viz., the effects of a stroke) and that he had had occasion to see him as a consulting physician in the Veterans’ Hospital in New Orleans. He had also seen him at the hospital in Shreveport a few days prior to the trial on January 21, 1961, and at the time of the trial he felt that Mr. Polmer was “as well oriented as to place, time, current events, past events and he is mentally in as good shape as I or anybody who is carrying on their business up to date,” and as to his physical condition he stated that “he is handicapped, but there are so many people with physical handicaps that are not impaired mentally, and Mr. Polmer, Mervin Polmer, well, it was remarkable to see the change, the change from 1956 until the present time. In 1956 he couldn’t speak, but now after four years he speaks very well, and he is understood clearly. You didn’t even have to ask him to repeat the answers, because I could understand them very, very well.” This doctor was definitely of the opinion that at the present Mr. Polmer was capable of administering and handling his personal affairs and that the interdiction should be removed and he should be restored to the status of a normal individual.
Also offered was the testimony of Mr. Gus Zimmerman, Secretary-Treasurer of the Lafourche Parish Police Jury, who knew Mr. Polmer prior to his incapacity and who had seen him just prior to the trial and talked with him, and he thought that his mind was “very sound, very logical” and that he remembered events and his reasoning was very good, “just as sound as mine.” This witness noticed the right side of Mr. Polmer was paralyzed but it was obvious that the left side was alright and he could manipulate his left arm and left leg and that his voice and speech were perfect. It was his opinion that Mr. Polmer was a logical, normal person.
On the record before us on the merits we do not find that the Lower Court has committed manifest or obvious error in its judgment terminating and revoking the prior judgment of interdiction of the petitioner and it is, accordingly, affirmed.
Affirmed.